IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VARTAN NATIONAL BANK, VARTAN FINANCIAL CORPORATION, and CENTRIC BANK,<br><br>　　　　　**Plaintiffs**<br><br>　　　v.<br><br>THE OFFICE OF THE COMPTROLLER OF THE CURRENCY, ADMINISTRATOR OF NATIONAL BANKS, and JENNIFER C. KELLY,<br><br>　　　　　**Defendants** | : CIVIL ACTION NO. 1:08-CV-1981<br>:<br>: (Judge Conner)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **MEMORANDUM**

This is a challenge under the Administrative Procedure Act ("APA") to the Office of the Comptroller of the Currency's final agency decision denying plaintiffs' request to depose Maryann Kennedy. Presently before the court are the parties' cross-motions for summary judgment (Docs. 8, 17). For the reasons that follow, defendants' motion (Doc. 8) will be granted, and plaintiffs' motion (Doc. 17) will be denied.

**I.  Statement of Facts**[1]

The dispute in this case concerns plaintiffs' right to depose Maryann Kennedy ("Kennedy"), an employee of defendant the Office of the Comptroller of the Currency ("OCC"). Kennedy is an OCC bank examiner responsible for monitoring the activities of federally-insured depository institutions authorized under the National Bank Act of 1864. See 12 U.S.C. §§ 7, 9, 481; (Doc. 13 ¶¶ 1, 4-5; Doc. 15 ¶¶ 1, 4-5). In this vein, Kennedy met with plaintiff Vartan National Bank's ("VNB") board of directors on July 13, 2005. (See Doc. 20, Ex. 1-2.) Kennedy recorded shorthand notes during this meeting, which reflected various board disclosures, including its representations regarding the future employment of VNB president Frank Fato ("Fato"). (Doc. 13 ¶¶ 12-13; Doc. 15 ¶¶ 12-13.) After the board meeting, Fato met with Kennedy and allegedly relayed concerns related to VNB's corporate governance. (See Doc. 20, Ex. A.)

Fato was terminated as VNB president five days later. (Doc. 13 ¶ 9; Doc. 15 ¶ 9.) Fato subsequently filed a retaliatory discharge suit (hereinafter "the Retaliatory Discharge Suit") in this court against the above-captioned plaintiffs, alleging that he was fired because of the disclosures made during the July 13

---

[1] Given the applicable standard of review, the court will present the facts in the light most favorable to the non-moving party with respect to each motion. See infra Part II.

2

conversation with Kennedy.² (See Doc. 20, Ex. 1; see also Civil Action No. 1:07-CV-1291, Doc. 1.) In an answer to Fato's complaint, plaintiffs claimed that the board reached its termination decision prior to Fato's meeting with Kennedy. (See Civil Action No. 1:07-CV-1291, Doc. 41 at 9, ¶ 4.) The Retaliatory Discharge Suit progressed into discovery, during which plaintiffs sent a document request to OCC pursuant to administrative regulations governing the production of non-public OCC information. (See Doc. 20, Ex. 1.) Specifically, plaintiffs sought materials pertaining to: (1) "Frank Fato's performance as President of Vartan National Bank during the period from August 2004 through July 2005"; (2) "the meeting Maryann Kennedy had with the Board of Directors for Vartan National Bank on July 13, 2005"; (3) "Maryann Kennedy's discussion with Frank Fato during or after a luncheon at Vartan National Bank . . . on July 13, 2005"; and (4) "any investigation the OCC initiated regarding Mr. Fato's comments to Maryann Kennedy during or after the luncheon at Vartan National Bank . . . on July 13, 2005." (Id.) Additionally, plaintiffs requested permission to depose Kennedy. (Id.)

On September 10, 2008, Senior Deputy Comptroller Jennifer Kelly ("Kelly") responded by letter to plaintiffs' request. (Doc. 20, Ex. 2.) Kelly indicated that OCC

---

² Fato filed the Retaliatory Discharge Suit pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1831j, which prohibits a federally-insured depository institution from discharging an employee that provides information to a federal banking agency regarding "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."

3

would disclose relevant portions of Kennedy's notes, taken during her meeting with the VNB board of directors. (Id.) However, Kelly rejected plaintiffs' request to depose Kennedy, explaining that plaintiffs "failed to demonstrate a compelling need, particularly in light of the release of the excerpt from the minutes of the board meeting." (Id.) Kennedy's meeting notes were produced to the parties in the Retaliatory Discharge Suit on October 17, 2008. (Doc. 13 ¶ 19; Doc. 15 ¶ 19.)

On October 31, 2008, plaintiffs commenced the instant action pursuant to the judicial review provisions of the APA. (Doc. 1.) Plaintiffs contend that Kennedy's testimony is essential to the ongoing litigation in the Retaliatory Discharge Suit and that OCC's refusal to permit Kennedy's deposition was "arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law." (Id.) OCC filed a motion for summary judgment on January 26, 2009,[3] (Doc. 8), and plaintiffs filed a

---

[3] OCC's motion for summary judgment (Doc. 8) was captioned as a motion "to dismiss or, alternatively, for summary judgment." Under Rule 12(d) of the Federal Rules of Civil Procedure, when "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(b)(6) motion to dismiss "must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Along with its motion (Doc. 8), OCC filed a statement of material facts (Doc. 13) pursuant to Local Rule 56.1, and submitted the administrative record as documentary evidence, (see Doc. 20, Exs. 1-4). Plaintiffs thereafter filed a cross-motion for summary judgment (Doc. 17), incorporated OCC's statement of materials facts as their own, (see Doc. 16), and referred extensively to the administrative record, (see Doc. 18). The parties have therefore briefed the dispute in accordance with Rule 56 and it is appropriate for the court to apply the Rule 56 standard, as opposed to that applicable to Rule 12. See Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 284-85 (3d Cir. 1991) (requiring that parties have notice before a district court converts a Rule 12(b)(6) motion to one seeking summary judgment).

cross-motion for summary judgment on February 10, 2009, (Doc. 17). The motions have been fully briefed and are ripe for disposition.

## II.     Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

In the instant matter, the parties have filed cross-motions for summary judgment. The court is permitted to resolve cross-motions for summary judgment concurrently. See InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004); 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998). According to the Third Circuit Court of Appeals:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).  When confronted with cross-motions for summary judgment, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.  FED. R. CIV. P. 56; see also Lawrence, 527 F.3d at 310.  Fortunately, the basic facts in the instant matter are substantially undisputed and have been borne out by the administrative record.

### III.  Discussion

The APA allows federal courts to review "final agency action for which there is no other adequate remedy."  5 U.S.C. § 704.  Final agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" may be set aside or held unlawful.  § 706(2)(A).  Judicial review pursuant to the arbitrary and capricious standard "focuses on the agency's decision making *process*, not on the decision itself," NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 190 (3d Cir. 2006) (emphasis in original); accordingly, the proper scope of inquiry "is narrow, and a court is not to substitute its judgment for that of the agency," CBS Corp. v. Fed. Commc'n Comm'n, 535 F.3d 167, 174 (3d Cir. 2008)

(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 41 (1983)).  In short, § 706(2)(A) envisions a deferential standard of judicial review, under which the reviewing court "presumes the validity of agency action."  SBC, Inc. v. Fed. Commc'ns Comm'n, 414 F.3d 486, 503 n.10 (3d Cir. 2005) (quoting Sw. Bell Tel. Co. v. Fed. Commc'ns Comm'n, 168 F.3d 1344, 1352 (D.C. Cir. 1999)).

Agency action is arbitrary and capricious when "the agency relied on factors outside those Congress intended for its consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence."  NVE, 436 F.3d at 190; Pa. Dep't of Pub. Welfare v. United States Dep't of Health & Human Servs., 101 F.3d 939, 943 (3d Cir. 1996) (holding that the court is "not empowered to substitute [its] judgment for that of the agency unless its action was irrational, not based on relevant factors, or outside statutory authority").  A reviewing court must discern whether the agency "made a clear error of judgment," such that its decision—in light of the applicable facts—is irrational.  Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).  Courts must remand an irrational agency decision for further consideration of the requester's petition.  Camp v. Pitts, 411 U.S. 138, 143 (1973).

In the instant matter, plaintiffs assert that OCC's final agency decision denying the request to depose Kennedy was arbitrary and capricious.  According to plaintiffs, the deposition testimony from Kennedy, "an unbiased bank examiner, . . . will corroborate testimony from the Bank's board members that they had agreed to

7

fire Fato before he made certain disclosures to Ms. Kennedy" after the VNB board meeting on July 13, 2005. (Doc. 18 at 7.) OCC argues that Kennedy's meeting notes are sufficient to accomplish this purpose. (See Doc. 12 at 10-12.) Plaintiffs acknowledge that the notes are helpful, but claims that they are evidentially insufficient and may be prohibited from trial as hearsay. (Doc. 18 at 7.) Thus, plaintiffs argue that they have a "compelling need" for Kennedy's testimony, and that OCC's denial of the deposition request was arbitrary, capricious, and an abuse of discretion.

OCC regulations explain that a party engaged in adversarial litigation may request disclosure of non-public OCC information—including the production of deposition testimony—by demonstrating that (1) "the information is relevant to the purpose for which it is sought"; (2) "that other evidence reasonably suited to the requester's needs is not available from any other source"; and (3) "that the need for the information outweighs the public interest considerations in maintaining the confidentiality of the OCC information and outweighs the burden on the OCC to produce the information." 12 C.F.R. § 4.33(a)(iii). A request for testimony may be denied absent demonstration of "a compelling need for the requested information." § 4.33(c)(i). A "compelling need" exists when "the requested information is relevant and . . . the relevant material contained in the testimony is not available from any other source." § 4.32(d). The language of the regulation unambiguously grants OCC the discretion necessary to weigh these factors and, if warranted, to deny a

8

requester's application.  See § 4.35(a) (stating that "OCC decides whether to release non-public OCC information based on its weighing of all appropriate factors" and explaining that "[e]ach decision is at the sole discretion" of OCC).

OCC determined that plaintiffs "failed to demonstrate a compelling need" for Kennedy's deposition and provided two reasons therefor.  (Doc. 20, Ex. B.)  First, Kennedy's notes, taken contemporaneously during her meeting with the VNB board of directors, were sufficient to provide evidence of the board's representations regarding Fato's future employment.  Second, the VNB board members were themselves available for deposition, allowing plaintiffs to acquire firsthand testimony regarding the content of any of the board's representations to Kennedy.  OCC reasoned that the notes and the board of directors' collective testimony would provide all that plaintiffs might hope to obtain from Kennedy herself, and thus the sought-after information was reasonably available from another source.  (See id.; see also Doc. 12 at 11.)  In addition, OCC considered the hardship of providing Kennedy for a deposition—a burden the agency described as "significant."  (Doc. 20, Ex. B.)  Finally, OCC considered—and then rejected—plaintiffs' arguments in favor of production, including the assertion that the notes are potentially excludable from trial as hearsay.[4]  (See id.)

---

[4] In its statement of decision, OCC acknowledges plaintiffs' hearsay concerns, but explained that "concerns about the possible admissibility of evidence do not justify the significant burden of making OCC personnel available for testimony." (Doc. 20, Ex. B)

9

The final agency decision regarding Kennedy's deposition was rational and adhered to the decision-making process required by the applicable regulations. OCC based its decision on the availability of alternate sources of evidence, weighed against the burden of producing Kennedy to testify—both of which are factors the OCC must analyze and discretionarily balance.[5]  See § 4.33(a)(iii); § 4.35(a); see also NVE, 436 F.3d at 190 (explaining that an agency decision is arbitrary or capricious when it "relie[s] on factors outside those Congress intended"); Pa. Dep't of Pub. Welfare, 101 F.3d at 943 (describing arbitrary or capricious agency action as decision making "not based on relevant factors").  Even if plaintiffs disagree with the fruits of the agency's analysis, OCC's weighing of the relevant considerations need only be *rational* to survive judicial scrutiny.  See Overton Park, 401 U.S. at 416 (describing an arbitrary or capricious agency decision as one in which the agency

---

[5] When regulatory language unambiguously furnishes an agency with discretion to weigh statutorily-prescribed considerations, and the agency weighs those considerations required by the regulatory framework, the agency's final determination is typically *per se* reasonable under § 706(2)(A) of the APA.  See Pa. Dep't of Welfare, 101 F.3d at 944 (holding agency decision "almost *per se* reasonable" when the "language of the regulation unambiguously" allowed the agency to take the challenged action).  In the matter *sub judice*, plaintiffs do not argue that OCC considered irrelevant or impermissible factors.  Rather, plaintiffs simply disagree with the weight OCC accorded each factor.  Such disagreement is essentially incognizable, as the court is not permitted to substitute its judgment for that of the agency, especially when the applicable regulatory framework so unmistakably grants OCC discretionary latitude in reaching its substantive conclusion.  See CBS, 535 F.3d at 174 (prohibiting the court from substituting its judgment with that of the agency); see also § 4.35(a) (entrusting OCC with the "sole discretion" to balance the appropriate factors).

10

reaches a "clear error of judgment" in light of applicable facts).  OCC's decision certainly passes muster under this deferential standard of review.

Additionally, the administrative record illustrates that OCC followed the proper decision-making *process* by assessing the relevance of Kennedy's testimony, discerning whether that evidence was reasonably available from other sources, and weighing plaintiffs' need for the information against public interest concerns.  See § 4.33(a)(iii).  In this fashion, OCC's analysis focused upon appropriate substantive factors using an appropriate, administratively-mandated process.  After completing the administratively-mandated process, OCC concluded that plaintiffs' need was not compelling.  This finding is rational as a matter of law.

11

**IV.** **Conclusion**

Under the APA's deferential standard of agency review, the court finds that OCC adhered to an appropriate decision-making process to reach a rational result. Plaintiffs' disagreement therewith amounts to nothing more than a plea for federal court second-guessing, a course of review prohibited both by statute and binding Third Circuit law. OCC's motion for summary judgment (Doc. 8) will therefore be granted and plaintiffs' motion for summary judgment (Doc. 17) will be denied.

An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:     April 15, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VARTAN NATIONAL BANK, VARTAN FINANCIAL CORPORATION**, and **CENTRIC BANK,** : : : : : **Plaintiffs** : : **v.** : : **THE OFFICE OF THE COMPTROLLER OF THE CURRENCY, ADMINISTRATOR OF NATIONAL BANKS**, and **JENNIFER C. KELLY,** : : : : : : : **Defendants** : | **CIVIL ACTION NO. 1:08-CV-1981** **(Judge Conner)** |

## **ORDER**

AND NOW, this 15th day of April, 2009, upon consideration of the cross-motions for summary judgment (Docs. 8, 17), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion (Doc. 8) for summary judgment is GRANTED.

2. Plaintiffs' motion (Doc. 17) for summary judgment is DENIED.

3. The Clerk of Court is directed to enter JUDGMENT for defendants the Office of the Comptroller of the Currency, Administrator of National Banks, and Jennifer C. Kelly, and against plaintiffs Vartan National Bank, Vartan Financial Corporation, and Centric Bank, with respect to all claims.

4. The Clerk of Court is directed to CLOSE this case.

                                                   S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge